WATERMAN, Respondent, vs. WATERMAN, Appellant.

*November 23 — December 15, 1891.*

*Contract: Pleading: Parties.*

1. In an action for breach of a contract the complaint alleged that the parties had agreed to enter into a partnership in the business of buying sheep and having them fattened for market — the defendant to attend to the purchasing in Chicago, and the plaintiff to arrange for having the sheep kept by farmers in Wisconsin; that, after the plaintiff had expended much time and labor in respect thereto, the defendant wrote to him from Chicago, saying: " C. wants to go in with me and put out a lot of sheep to farmers to feed; and I inclose a blank contract, which explains about the nature of the deal. I told him that you and I had intended to do something in that line, and he said, ' Hire S. [the plaintiff] and give

Waterman vs. Waterman.

him $500. . . . Now, if you can find out about what can be done in that line, we can furnish all the good sheep they can take. It will take a good deal of money to run the thing, and a big risk; and I think you would as soon take a sure thing as the chances. . . . I think it would be safe for us to give 4c. for the gain up to the 1st of January. If fed through till spring, might give 5c. But see what you can do on the 4c. basis, and write soon." The blank contract referred to, which was set out in the complaint, was one to be entered into between the defendant and each farmer taking sheep to feed, and provided for the keeping thereof, the manner of weighing, etc., the amount to be paid for each pound of increase being left blank. The complaint further alleged that the plaintiff at once wrote to defendant that he would accept said propositions; that pursuant to said agreement defendant shipped a large number of sheep; that plaintiff spent much time and labor in arranging for their keeping and in making contracts with farmers; that defendant finally neglected and wholly failed to carry out said agreement, and now denies that said agreement was made, and refuses to pay the plaintiff said $500 or any sum whatever. *Held*, that the complaint stated a cause of action on an express contract.

2. The last paragraph of the complaint alleged that plaintiff's services were worth $500. *Held*, that this cause of action on a *quantum meruit* might be joined with that on the express contract.

3. C., referred to in defendant's letter, was not a necessary party defendant, it not appearing that he was bound by or interested in the contract.

APPEAL from the Circuit Court for *Dane* County.

The defendant demurred to the amended complaint on the grounds (1) that there is a defect of parties defendant, and (2) that the complaint does not state facts sufficient to constitute a cause of action. The appeal is from an order overruling such demurrer.

The amended complaint, after the title of the cause, is as follows:

" The plaintiff, complaining of the defendant, respectfully shows to the court that prior to August 1, 1890, the plaintiff and defendant had had certain negotiations, and had agreed to enter into a partnership in the business of buying sheep and forwarding them from Chicago and other places

to the village of Oregon, Dane county, Wisconsin, there to be fed and fattened, preparatory to being sent to the final market. That it was understood and arranged that the defendant should tend to the purchasing of said sheep and shipping them to Oregon, but that the plaintiff, by such arrangement, was to attend to the duty of receiving said sheep and hiring them kept among the farmers in the vicinity of Oregon, paying therefor such prices as might be profitable. That, after having made such preliminary arrangements, and after the plaintiff had expended a large amount of labor and time in respect thereto and relying thereon, the defendant wrote and mailed to the plaintiff from Chicago a letter in words and figures as follows:

"'CHICAGO, Aug. 1, 1890.

"'J. S. Waterman,— DEAR SIR: Charlie wants to go in with me and put out a lot of sheep to farmers to feed; and I inclose a blank contract, which explains about the nature of the deal. I told him that you and I had intended to do something in that line, and he said, "Hire Spalding, and give him five hundred dollars." I intended to come up this week, but have just got a dispatch from one of my shippers from Oregon, who will be at Rochelle on Sunday with forty cars, and I will have to meet him. Now, if you can find out about what can be done in that line, we can furnish all the good sheep they can take. It will take a good deal of money to run the thing, and a big risk; and I think you would as soon take a sure thing as the chances. At the same time you can have all what sheep you want to feed yourself. I think there may be quite a good many large and small farmers who would like to feed from 50 to 500, or what they could care for well and make fat. You can explain to them what would be necessary for them to do in the way of shelter, feed, and water to get a good gain on them. Feeding sheep are going to sell higher than last year, and they will begin to arrive freely next week. Those parties

who have got pasture and can take them soon can get a good gain on the grass and a little grain to wind up on later. I think Lich wants some sheep there and also at Rochelle. George Fox might handle some; also Marion Ames and D. Main and other parties in his section. John Miller, on the Davidson farm, wants sheep. I think small farmers who would take from 50 to 100 would generally get a better gain on them than the larger feeders. I can dip the sheep if necessary, and have them all in a healthy condition. I think it would be safe for us to give 4c. for the gain up to the 1st of January. If fed through till spring, might give 5c. But see what you can do on the 4c. basis, and write soon. I can come up most any time. We can manage so that you        some of those yards if you want to do so. Tell Crank that we will have plenty of sheep there, and have the yards fixed. Answer soon what you think of the prospects of doing anything in this line.

"'Resp. yours,        J. A. WATERMAN.'

"That the plaintiff immediately wrote and mailed an answer to said letter, informing the defendant that he would accept said propositions. That said defendant inclosed in the letter above set forth, and mailed to the plaintiff at the same time, a contract in words and figures as follows: [Here followed a copy of the contract, in which the defendant was named as party of the first part, blanks being left for the name of the other party (the farmer receiving the sheep), and for dates, amounts, etc. The contract provided for the care and feeding of the sheep, for the manner of weighing them, how the loss should be borne in case any of the sheep died, that the defendant should pay a certain amount (left blank) for each pound of increase, etc.]

"That, relying on the former conversations and agreements of said parties, and the said letters and blank contract so inclosed, the plaintiff understood that the said preliminary contract of partnership was to be abandoned,

and that the plaintiff was to continue to render services for the defendant of the nature and character as follows: That the defendant should ship large quantities of sheep from Chicago and other places to the plaintiff, and that the plaintiff should receive said sheep and make arrangements with the farmers in that vicinity to pay such farmers some reasonable compensation for each pound of weight said sheep should increase during a given time. Said contracts were to provide for the proper weighing of said sheep at different times and in some proper manner; and, in case any of said sheep should die through the fault or neglect of the farmers by whom they were kept, that such farmer should pay said defendant for the sheep so dying at a specified price; and, in case said sheep should not increase in weight while so kept, that such farmer should not receive any compensation; and various other agreements and provisions were to be made with said farmers for the due execution and carrying on of said business; and that, in consideration thereof, the defendant should pay to the plaintiff the sum of $500.

"That, pursuant to said agreement, the defendant shipped, or caused to be shipped, to Oregon, large numbers of sheep, some of which were shipped in his own name and some of which were shipped in the names of other persons. That the plaintiff duly took charge of said sheep, and expended large amounts of time and labor in receiving said sheep and making contracts; and that he made a great effort and devoted a large amount of time in making the preliminary arrangements with many farmers in said community to carry out said agreement and perform in good faith all the conditions and requirements of said contract on his part to be performed. That, although the defendant sent a large number of sheep and caused others to be sent, he finally neglected and wholly failed to carry out said agreement, and to ship sheep to supply the arrangements, provisions,

and contracts which he had caused the plaintiff to make, and has wholly revoked and violated his said agreement without any cause or excuse, to the great damage of the plaintiff; and he has wholly neglected and failed to pay to the plaintiff the sum of $500, or any sum whatever upon said contract. And the defendant wholly repudiates the said agreement, and now denies that said agreement was made, or that any agreement was made between them, and he refuses to pay said plaintiff the sum of $500, and denies his liability to pay any sum whatever.

"And the plaintiff alleges that the services were reasonably worth the sum of $500, and that he has been damaged in the premises by the failure of the defendant to pay for said services and to carry out his agreement in the sum of $500.

"Wherefore the plaintiff demands judgment for said amount of $500 and the costs of suit."

For the appellant there was a brief by *Olin & Butler*, and oral argument by *H. L. Butler*. To the point that the defendant's letter was too indefinite and uncertain in its terms to constitute a proposition, the acceptance of which would form a contract, they cited *Moulton v. Kershaw*, 59 Wis. 316; *Kinghorne v. Montreal Tel. Co.* U. C. 18 Q. B. 60; *Ridgway v. Wharton*, 6 H. L. Cas. 268; Bishop, Cont. sec. 324; *Sourwine v. Truscott*, 17 Hun, 432; *Beaupre v. P. & A. Tel. Co.* 21 Minn. 155; *Appleby v. Johnson*, L. R. 9 C. P. Cas. 158.

*Burr W. Jones*, for the respondent

COLE, C. J. We certainly do not consider the complaint in this case a model of good pleading. Instead of containing "a plain and concise statement of the facts constituting the cause of action" it sets out the evidence showing the contract, which was unnecessary. But, while the complaint is prolix, it is not difficult to see that it states a good cause

of action.   The letter and the contract which was entered
into clearly show the defendant's liability.   He undertook
to furnish sheep, which the plaintiff was to get kept and
fattened by farmers at Oregon until the animals were ready
for market.   For attending to this business the plaintiff was
to receive $500 for his services.   The plaintiff accepted the
proposition and made arrangements with the farmers in
that vicinity for keeping the sheep.   It is alleged that he
spent much time and labor in receiving the sheep and in
making the arrangements with the farmers, and that he
performed the contract on his part to be performed; and
that, while the defendant sent a large number of sheep and
caused others to be sent, he finally neglected and failed to
carry out the agreement which had been entered into.   A
breach of the contract is shown.   This states a cause of ac-
tion on an express contract.

It is suggested that the writings set out in the complaint
do not show that the parties entered into a definite con-
tract, but that they were negotiating about a matter which
was never sufficiently perfected to really amount to a con-
tract and form the basis of a liability.   We certainly disa-
gree with counsel in this view of the complaint.   If language
means anything, the complaint shows that the parties en-
tered into and commenced executing a definite, certain
agreement, plain in its terms, by which rights and liabilities
were secured and incurred.   To our minds this position is
too plain to require argument or comment, and it is need-
less to multiply words about it.   In the last paragraph of
the complaint the pleader evidently counts on a *quantum
meruit*, that the services rendered by the plaintiff were rea-
sonably worth $500.   We perceive no valid objection to
uniting such a cause of action with one upon an express
contract.

It is further said in support of the demurrer that there
is a defect of parties.   We deem this objection equally un-

tenable as the one we have just considered. In the letter which the defendant sent to the plaintiff, dated August 1, 1890, he says: "Charlie wants to go in with me and put out a lot of sheep to farmers to feed; and I inclose a blank contract, which explains about the nature of the deal." Who Charlie was or is does not appear, nor does it appear that any one except the defendant is liable upon the contract which was made with the plaintiff. In the blank which was sent the defendant is the only person named as "party of the first part." This is sufficient to rebut all presumption that Charlie or anybody else was liable or had any joint interest in the contract sued on. ·What Charlie's business relations with the defendant were is of no concern, so long as it does not appear that he was bound by or interested in the contract upon which the action is brought.

*By the Court.*— The order of the circuit court overruling the demurrer is affirmed, and the cause remanded for further proceedings.